IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CAROLYN DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | 4:16CV3149 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| CITY OF LINCOLN, d/b/a | ) | **AND ORDER** |
| LINCOLN ELECTRIC SYSTEM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, who was 65 years old at the relevant time, sues her former employer under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1101 to 48-1125, claiming constructive discharge, retaliation, and discrimination based on her age. In her former employment with Defendant, Plaintiff served as the Corporate Communications Coordinator. One of Plaintiff's factual allegations is that, in the course of discussing revisions that should be made to Defendant's annual report, Plaintiff's 35-year-old supervisor told Plaintiff that she "was using [her] reptilian brain and while [the supervisor] could show [Plaintiff] the requested revisions, [Plaintiff] would not be able to comprehend them." (Filing No. 1 at CM/ECF p. 2.)

Plaintiff moves to exclude (Filing No. 23) the opinion testimony of Defendant's expert, clinical psychologist Robert Arias, Ph.D., that "the term 'Reptilian brain' is not age-related or age specific. Use of the 'reptilian brain' or reliance on 'reptilian brain' thinking is not a trait identifiable to any specific age group." (Filing No. 25 at CM/ECF p. 2.)

## Dr. Arias's Testimony

Dr. Arias bases his opinion on his "education, training and experience and Plaintiff's written complaint submitted to the Lincoln Electric System Ethics Hotline," as well as the "commonly understood usage of neuropsychological terms." (Filing No. [25 at CM/ECF p. 2](#)). In support of his opinion, Dr. Arias includes his curriculum vitae ("CV") and a list of deposition and courtroom testimony he has given since 2011.

Dr. Arias's CV indicates that he holds a B.A. in psychology, M.S. in Education, M.A. in clinical psychology, and Ph.D. in clinical psychology. He also completed a one-year clinical psychology/neuropsychology internship and a postdoctoral fellowship in neuropsychology. He now practices clinical psychology and neuropsychology "with additional emphasis on pain psychology," treating "patients ranging from children to geriatrics." (Filing No. [25 at CM/ECF pp. 3](#)-4.) Dr. Arias is an author of various articles about adult residual ADD, memory, and remote telepsychiatric evaluation and has given presentations on dementia, PTSD, TBI, conversion disorder, chronic pain, substance abuse and brain functioning, capacitance evaluation, Parkinson's disease, and multiple sclerosis. (Filing No. [25 at CM/ECF p. 6](#).)

Plaintiff argues that Dr. Arias's opinion testimony should be excluded under *[Daubert v. Merrell Dow Pharms., Inc.](#)*, 509 U.S. 579 (1993), because Arias has never met or examined Plaintiff; Arias's opinion is based on "his random personal opinion" instead of empirical evidence or studies; Arias is not a medical doctor and is not qualified to "describe parts of the brain and how they function"; "general psychology experience does not qualify a witness to define a meaning for 'reptilian brain'"; "Dr. Arias provides two conclusory sentences without citations to any documents or evidence . . . regarding his alleged analysis"; and Arias's opinion would not be helpful to the jury. In short, Plaintiff argues that "Dr. Arias offers nothing more than an unsupported conclusion, based on no particular expertise or other specialized knowledge that would distinguish him from any other lay witness in this case." (Filing

No. 24, Pl.'s Br. Supp. Mot. to Exclude Expert Test.; Filing No. 32, Pl.'s Reply Br.)

Defendant asserts that it will use "Dr. Arias' testimony explaining the meaning of a technical term used in his field" "to show that in the field (neuroscience) where the term 'reptilian brain' is used most frequently that the term does not have a relation to a particular age group and that in fact, a reptilian brain is essentially an aspect of human brain anatomy." (Filing No. 26, Br. Opp'n Pl.'s Mot. Exclude Expert Test. at CM/ECF pp. 2 & 4.)

### *Daubert*

"The proponent of the expert testimony bears the burden to prove its admissibility." *Menz v. New Holland North America, Inc.*, 507 F.3d 1107, 1114 (8th Cir. 2007). Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The screening requirement of Rule 702 has been boiled down to a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed

> evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014) (quoting *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008)).

"Rule 702 reflects a 'relax[ation of] the traditional barriers to opinion testimony, and the court's inquiry is intended to be flexible." *In re Prempro Products Liability Litigation*, 586 F.3d 547, 565 (8th Cir. 2009) (quoting *Daubert*, 509 U.S. at 588.) "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Id.* (quoting *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005)).

**Plaintiff's Claims**

Plaintiff brings claims for age-based constructive discharge, retaliation, and discrimination under the ADEA and the NFEPA.

> To make out a case of constructive discharge, [the plaintiff] had to show that a reasonable person would have found her working conditions intolerable, and that [the defendant] intended to make her resign or, at a minimum, that her resignation was reasonably foreseeable given the conditions under which she was working. . . . [T]o prevail on a constructive discharge claim, a plaintiff must show that his or her working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative.

*Betz v. Chertoff*, 578 F.3d 929, 936 (8th Cir. 2009) (internal quotation marks and citations omitted); *see also Rickard v. Swedish Match N. Am., Inc.*, 773 F.3d 181, 186 (8th Cir. 2014) (same).

"To make out a claim of retaliation, [the plaintiff] had to show that she

participated in a protected activity, that [the defendant] treated her in a manner that was materially adverse, and that there was a causal relationship between the two." *Betz*, 578 F.3d at 937.

"To establish a claim of intentional age discrimination, a plaintiff may present direct evidence of such discrimination or may prove his claim through circumstantial evidence" using the familiar *McDonnell Douglas* burden-shifting framework. *Aulick v. Skybridge Americas, Inc.*, 860 F.3d 613, 620 (8th Cir. 2017) (internal quotation marks and citation omitted); *Holmes v. Trinity Health*, 729 F.3d 817, 821 (8th Cir. 2013).

Here, Plaintiff may seek to use her supervisor's "reptilian brain" comment as evidence of intolerable working conditions for purposes of her constructive-discharge claim or as evidence of age discrimination. In order to be considered direct evidence of intentional age discrimination, Plaintiff will need to show that a decision-maker made the "reptilian brain" comment and such comment was not "facially and contextually neutral." *Aulick*, 860 F.3d at 620 (internal quotation marks and citation omitted) (employer's comment that it was looking for a "new face" was not direct evidence of age discrimination because "new face" was facially and contextually neutral when used with plaintiff).

Defendant apparently seeks to use Dr. Arias's opinion testimony to show that that "reptilian brain" comment was facially and contextually neutral and, therefore, not evidence relevant to age-based constructive discharge or discrimination.

## Discussion

Reptilian brain" is a unique term that has been used in diverse contexts such as

legal trial strategy, marketing, management and leadership, science, and medicine.[1] Juries faced with uncommon terms can benefit from expert testimony defining the words as they are used in particular fields, such as law enforcement and other industries when the terms at issue are sufficiently technical, are terms of art in the relevant industry, or have meanings in the industry that are different from ordinary meanings. *Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 666 F.3d 1099, 1111 (8th Cir. 2012) (expert testimony regarding whether party functioned as an "owner" or "lender" was properly excluded because it was not "ambiguous in the sense that [it was] of a sufficiently technical nature to be the subject of expert testimony'") (internal quotation marks and citation omitted); *United States v. Rivera-Rosario*, 300 F.3d 1, 16-17 (1st Cir. 2002) (affirming the admission of law enforcement expert testimony as to the meaning of code words); *Nucor Corp. v. Nebraska Pub. Power Dist.*, 891 F.2d 1343, 1350 (8th Cir. 1989) (district court did not err in allowing expert testimony on meaning of words in contract that were "of a sufficiently technical nature to be the subject of expert testimony"); *LaSalle Bank Nat. Ass'n v. CIBC Inc.*, No. 08 CIV. 8426 WHP HBP, 2012 WL 466785, at *10 (S.D.N.Y. Feb. 14, 2012) (proposed expert was properly barred from testifying about the

---

[1] David Ball, *Damages and the Reptilian Brain*, Trial, at 24 (Sept. 2009) (how to appeal to the jurors' "reptilian brain" in effective trial advocacy); Frank Costilla, Jr., *Underlying Principles that Motivate Jurors to Give*, AAJ-CLE 237 (Feb. 2008) ("In addressing juries, it is therefore necessary to bypass the jurors' cortexes and reconnect to their reptilian brain."); Clotaire Rapaille, The Culture Code: An Ingenious Way to Understand Why People Around the World Live and Buy as They Do, at 74 (Broadway Books 2006); Filing 28 at CM/ECF p. 21 (deposition testimony of Kelley Porter explaining her use of "reptilian brain" to Plaintiff; "it's a common phrase. . . . it's something that you hear in leadership discussions and how to stay creative . . . how to handle some difficult situations, how to get through some projects. . . . Reptilian brain mode just means that you're in survival mode."); Philip Lieberman, Human Language and Our Reptilian Brain: The Subcortical Bases of Speech, Syntax, and Thought (Harvard University Press 2009); Martin Brune, Textbook of Evolutionary Psychiatry & Psychosomatic Medicine: The Origins of Psychopathology (Oxford University Press 2d ed. 2016).

meaning of "material" and "adverse" because "[n]o evidence has been offered that these are terms of art in the . . . industry or that they have meanings in that industry that are different from their ordinary meanings"); *NIC Holding Corp. v. Lukoil Pan Americas, LLC*, No. 05CIV9372LAKFM, 2007 WL 1467424, at *1 (S.D.N.Y. May 16, 2007) ("it is common in this District for police or other law enforcement officials to give expert testimony about the meaning of code words used in recorded conversations, despite the court's inability to verify through independent sources that the testimony being proffered is accurate").

The term "reptilian brain" is sufficiently unusual that it could be deemed a "term of art" such that expert testimony regarding its meaning could be helpful to the jury. The reliability of Dr. Arias's opinion testimony that "the term 'Reptilian brain' is not age-related or age specific" and that "[u]se of the 'reptilian brain' or reliance on 'reptilian brain' thinking is not a trait identifiable to any specific age group" depends heavily upon Dr. Arias's knowledge, training, and experience, not scientific methods. *United States v. Najera*, No. CRIM.A. 12-10089-01, 2013 WL 2254501, at *4 (D. Kan. May 22, 2013) ("[T]here is no recognized scientific test to determine the meaning of gang graffiti. . . . the reliability of the expert's opinion must be based on law enforcement methodology which . . . must turn upon the training, education and experience of the officer on that particular subject. Scientific methods are not required. The *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony from a gang expert, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it.") (internal quotation marks and citations omitted).

Dr. Arias is clearly well-educated and trained in neuropsychology such that he can competently testify as to the definition of "reptilian brain" *as used in his field*. Whether Arias's opinion regarding the meaning of the term in his field is relevant to how Plaintiff's supervisor was using the term in the workplace is something that can only be determined as the trial unfolds. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("[T]he trial court's role as gate keeper under *Daubert* is not

7

intended to serve as a replacement for the adversary system. Rather, as *Daubert* makes clear, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (internal quotations and citations omitted).

I conclude that Dr. Arias's training, education, and experience form a sufficient basis for his opinion regarding the meaning of the term "reptilian brain" in his field of neuropsychology, and that such expert opinion testimony may—assuming the proper foundation is laid—assist the jury in deciding whether Plaintiff's supervisor's remark is evidence relevant to age-based constructive discharge or discrimination.

Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion to Exclude (Filing No. 23) Expert Testimony of Robert Arias, Ph.D., is DENIED, and the opinion testimony of Robert Arias, Ph.D., that—as used in his field of neuropsychology—"the term 'Reptilian brain' is not age-related or age specific" and the "[u]se of the 'reptilian brain' or reliance on 'reptilian brain' thinking is not a trait identifiable to any specific age group" is admissible, subject to appropriate objections at trial, the substance of which cannot be determined and ruled upon at this time; and

2. Defendant's Motion to Supplement Index of Evidence Out of Time (Filing No. 29) is DENIED as moot, as the court did not consider such evidence.

DATED this 2nd day of October, 2017.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge